# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE HOPE COLLEGE DATA SECURITY BREACH LITIGATION | Case No: 1:22-cv-1224 |
|  | HONORABLE PAUL L. MALONEY |
|  | **CLASS ACTION** |
|  | **JURY TRIAL DEMANDED** |

### PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVES AND <u>SETTLEMENT CLASS COUNSEL</u>

Pursuant to Federal Rule of Civil Procedure 23(e)(2) ("Rule 23"), Plaintiffs, individually and on behalf of all others similarly situated, hereby move this Court for final approval of the class action Settlement that this Court preliminarily approved on January 3, 2024 (ECF No. 32): Plaintiffs respectfully request this Court:

1. Grant final certification of the Settlement Class for settlement purposes pursuant to Rule 23(a) and (b)(3);

2. Finally appoint Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaskas, and Elise Carter as Class Representatives;

3. Finally appoint Benajamin F. Johns of Shub & Johns LLC as Settlement Class Counsel;

4. Find that the Notice met the requirements of Rule 23(c)(2)(B);

5. Find that the terms of the Settlement Agreement are fair, reasonable, and adequate and are approved, adopted, and incorporated by the Court;

6. Direct the Parties, their respective attorneys, and the Claims and Settlement Administrator to consummate the Settlement in accordance with the Final Judgment Approving Class Action Settlement ("Final Judgment") and terms of the Settlement Agreement; and

7. Resolve all claims as to all Parties and Settlement Class Members in this action and issue the Final Judgment.

This Motion is based on: (1) the contents of this Motion; (2) the Brief in Support of this Motion filed herewith; (3) the Declaration of Cameron R. Azari. Esq. on Implementation and Adequacy of Settlement Notice Plan by the court-appointed Settlement Administrator, Epiq, attached as Exhibit B to the Brief in Support; (4) the Declaration of Settlement Class Counsel Benjamin F. Johns in Support of Plaintiffs' Unopposed Motion for Final Approval of Class

Action Settlement, attached as Exhibit A to the Brief in Support; (5) the Settlement Agreement and accompanying Exhibits, attached as Exhibit 1 to the Johns Declaration; (6) Plaintiffs' Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement, Brief in Support, and Supporting and Supplemental Declarations (ECF Nos. 29, 30); (7) all other pleadings and papers on file in this action; and (8) any oral argument that may be heard by this Court at or prior to the Final Approval Hearing currently scheduled for May 20, 2024.

For the reasons set forth in the accompanying Brief in Support, Plaintiffs respectfully request that the Court grant final approval to the Class Action Settlement and enter the final approval order, and judgment, in the forms attached to the Brief in Support as Exhibit D, E, respectively. The undersigned counsel have communicated with counsel for Defendant Hope College, who have indicated that they have no opposition to the relief sought in this motion.

Date:  May 6, 2024            Respectfully Submitted,

           */s/ Benjamin F. Johns*
           Benjamin F. Johns
           Samantha E. Holbrook
           **SHUB & JOHNS LLC**
           Four Tower Bridge
           200 Barr Harbor Drive, Ste 400
           Conshohocken, PA 19428
           T: (610) 477-8380
           bjohns@shublawyers.com
           sholbrook@shublawyers.com

           *Settlement Class Counsel*

E. Powell Miller (P39487)
Emily E. Hughes (P68724)
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

**LOWEY DANNENBERG, P.C.**
Christian Levis*
Amanda G. Fiorilla*
44 South Broadway, Suite 1100
White Plains, NY 10601
T: (914) 997-0500
clevis@lowey.com
afiorilla@lowey.com

**LOWEY DANNENBERG, P.C.**
Anthony M. Christina*
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
T: (215) 399-4770
achristina@lowey.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner
Philip J. Krzeski
100 Washington Avenue South, Ste. 1700
Minneapolis, MN 55401
bbleichner@chesnutcambronne.com
pkrzeski@chesnutcambronne.com

**THE LYON LAW FIRM, LLC**
Joseph M. Lyon
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
jlyon@thelyonfirm.com

Charles R. Ash, IV (P73877)
**ASH LAW, PLLC**
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: 734-234-5583

cash@nationalwagelaw.com

Terence R. Coates
Justin C. Walker
Dylan J. Gould*
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

*Additional Counsel for the Settlement Class*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

|  |  |
|---|---|
| IN RE HOPE COLLEGE DATA SECURITY BREACH LITIGATION | Case No: 1:22-cv-1224 |
|  | HONORABLE PAUL L. MALONEY |
|  | **CLASS ACTION** |
|  | **JURY TRIAL DEMANDED** |

## BRIEF IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF A SETTLEMENT CLASS, AND APPOINTMENT OF CLASS REPRESENTATIVES AND SETTLEMENT CLASS COUNSEL

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Should the Court grant final certification of the Settlement Class pursuant to the Federal Rules of Civil Procedure Rule 23(a) and (b)(3)?

**Plaintiffs Answer:     Yes**

2.      Should the Court finally appoint Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaskas, and Elise Carter as Class Representatives because they fairly and adequately represented the interests of the Settlement Class?

**Plaintiffs Answer:     Yes**

3.      Should the Court finally appoint Benjamin F. Johns of Shub & Johns LLC, as Settlement Class Counsel, finding that Mr. Johns has fairly and adequately represented the interests of the Settlement Class?

**Plaintiffs Answer:     Yes**

4.      Should the Court find that the Notice met the requirements of Rule 23(c)(2)(B)?

**Plaintiffs Answer:     Yes**

5.      Should the Court find that the proposed class action settlement is fair, reasonable and adequate and, accordingly, grant final approval to it pursuant to Fed. R. Civ. P. 23(e)(2)?

**Plaintiffs Answer:     Yes**

## MOST CONTROLLING AUTHORITY

- Fed. R. Civ. P. 23

- *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)

- *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003)

- *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818 (E.D. Mich. 2008)

- *UAW v. Gen. Motors Corp.*, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006)

- *UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

- *Williams v. Vukovich*, 720 F.2d 909 (6th Cir. 1983)

- Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010)

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 7, 12, 13
*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ................................................ 9, 10, 12
*Bittinger v. Tecumseh Prods. Co.*,
   123 F.3d 877 (6th Cir. 1997) ............................................................. 10
*Breneman v. Keystone Health*,
   No. 1:22-cv-01643 (Pa. Com. Pl. Aug. 2023) ................................. 21
*Calloway v. Caraco Pharm. Labs., Ltd.*,
   287 F.R.D. 402 (E.D. Mich. 2012) ................................................... 13
*Curry v. SBC Commc'ns, Inc.*,
   250 F.R.D 301 (E.D. Mich. 2008) ...................................................... 8
*Daoust v. Maru Rest., LLC*,
   No. 17-cv-13879, 2019 WL 1055231 (E.D. Mich. Feb. 20, 2019) ......................... 7
*Davidson v. Henkel*,
   302 F.R.D. 427 (E.D. Mich. 2014) ...................................................... 8
*Dick v. Sprint Commc'ns Co. L.P.*,
   297 F.R.D. 283 (W.D. Ky. 2014) ....................................................... 23
*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974) .......................................................................... 22
*Fidel v. Farley*,
   534 F.3d 508 (6th Cir. 2008) .............................................................. 23
*Fox v. Iowa Health Sys.*,
   No. 3:18-cv-00327, 2021 WL 826741 (W.D. Wis. Mar. 4, 2021) .......................... 21
*Garner Props & Mgmt. v. City of Inkster*,
   333 F.R.D. 614 (E.D. Mich. 2020) ................................................... 16
*Gascho v. Glob. Fitness Holdings, LLC*,
   822 F.3d 269 (6th Cir. 2016) .............................................................. 24
*George v. Acad. Mortg. Corp.*,
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) ............................................ 20
*Hall v. Bank of Am., N.A.*,
   No. 1:12-cv-22700, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014) ....................... 20
*Halliday v. Weltman, Weinber & Reis Co., L.P.A.*,
   No. 11–14275, 2013 WL 692856 (E.D. Mich. Feb. 26, 2013) ........................... 14
*Hanlon v. Chrysler*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................... 20, 21
*Hillson v. Kelly Servs. Inc.*,
   No. 2:15-cv-10803, 2017 WL 279814 (E.D. Mich. Jan. 23, 2017) ....................... 15
*Hughes v. Microsoft Corp.*,
   No. C93-0178C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ....................... 21
*In re Am. Med. Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ........................................................ 8, 10

*In re Banner Health Data Breach Litig.*,
No. 2:16-cv-02696, 2020 WL 12574227 (D. Ariz. Apr. 21, 2020) ....................................... 22

*In re C.R. England Inc. Data Breach Litig.*,
No. 2:22-cv-374 (D. Utah) ................................................................................................... 16

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ................................................................................. 20, 22

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
No. 3:08-md-01998, 2009 WL 5184352 (W.D. Ky. Dec. 22, 2009) ..................................... 23

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
722 F.3d 838 (6th Cir. 2013) ....................................................................................... 8, 9, 12

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*,
2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ............................................................... 17, 23

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*,
497 F.3d 615 (6th Cir. 2007) ...................................................................................... passim

*IUE-CWA v. Gen. Motors Corp.*,
238 F.R.D. 583 (E.D. Mich. 2006) ...................................................................................... 22

*Jones, et al., v. P2ES Holdings, LLC*,
No. 23-cv-00408 (D. Colo.) ................................................................................................. 16

*Kinder v. Nw. Bank*,
278 F.R.D. 176 (W.D. Mich. 2011) ...................................................................................... 8

*Leonhardt v. ArvinMeritor, Inc.*,
581 F. Supp. 2d 818 (E.D. Mich. 2008) .............................................................................. 14

*Machesney v. Lar-Bev of Howell, Inc.*,
317 F.R.D. 47 (E.D. Mich. 2016) ........................................................................................ 12

*Massiah v. MetroPlus Health Plan, Inc.*,
No. 11-cv-05669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ......................................... 20

*Merenda v. VHS of Michigan, Inc.*,
296 F.R.D. 528 (E.D. Mich. 2013) ...................................................................................... 11

*Meyers v. Onix Grp., LLC*,
No. CV 23-2288-KSM, 2023 WL 4630674 (E.D. Pa. July 19, 2023) ................................... 11

*Olden v. Gardner*,
294 F. App'x 210 (6th Cir. 2008) ........................................................................................ 20

*Powers v. Hamilton Cnty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) .............................................................................................. 12

*Reynolds v. Marymount Manhattan College*,
No. 1:22-cv-06486 (S.D.N.Y.) ............................................................................................. 16

*Rosado v. eBay, Inc.*,
No. 5:13-cv-04005, 2016 WL 3401987 (N.D. Cal. June 21, 2016) ...................................... 22

*Ryder v. Wells Fargo Bank, N.A.*,
No. 1:19-cv-638, 2022 WL 223570 (S.D. Ohio Jan. 25, 2022) ...................................... 21, 22

*Sheick v. Auto. Component Carrier, LLC*,
No. 09-14429, 2010 WL 3070130 (E.D. Mich. Aug. 2, 2010) ............................................. 17

*Sprague v. General Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ................................................................................................ 9

*Thomsen v. Morley Cos. Inc.*,
639 F. Supp. 3d 758 (E.D. Mich. 2022) .............................................................................. 16

*Tucker v. Marietta Area Health Care,*
No. 2:22-cv-00184 (S.D. Ohio) ................................................................ 16
*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ........................................................................... 9
*Williams v. Vukovich,*
720 F.2d 909 (6th Cir. 1983) .................................................................. 14
*Yaeger v. Subaru of Am., Inc.,*
No. 1:14-cv-4490, 2016 WL 4541861 (D.N.J. Aug. 31, 2016) ............................ 21

## Other Authorities

*Newberg on Class Actions* § 13:48 (6th ed.) ...................................................... 15
*Newberg on Class Actions* § 11.41 (4th ed. 2002) .............................................. 13

## Rules

Fed. R. Civ. P. 23(a) ............................................................................. 7, 8
Fed. R. Civ. P. 23(a)(1) ............................................................................ 8
Fed. R. Civ. P. 23(a)(2) ............................................................................ 9
Fed. R. Civ. P. 23(a)(3) ............................................................................ 9
Fed. R. Civ. P. 23(a)(4) ........................................................................... 10
Fed. R. Civ. P. 23(b) ............................................................................. 11
Fed. R. Civ. P. 23(b)(3) ........................................................................ 8, 12
Fed. R. Civ. P. 23(c)(2)(B) ....................................................................... 23
Fed. R. Civ. P. 23(e)(2) .......................................................................... 14
Fed. R. Civ. P. 23(e)(2)(C) ....................................................................... 15
Fed. R. Civ. P. 23(g)(1)(B) ....................................................................... 25

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ..................................2

III.   SETTLEMENT TERMS .........................................................................................3

       A.   Class Definition ...........................................................................................4
       B.   Settlement Fund ...........................................................................................4
       C.   Release .........................................................................................................5
       D.   Notice and Administration............................................................................6
       E.   Service Award and Attorneys' Fees and Expenses.......................................7

IV.    THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND
       SHOULD BE CERTIFIED.......................................................................................7

       A.   Rule 23(a) Requirements Are Met for Settlement Purposes....................9
       B.   Rule 23(b) Requirements Are Met for Purposes of Settlement ..............11
            1.   Common Questions of Law and Fact Predominate ..................13
            2.   A Class Action Is the Superior Method of Adjudication..........13

V.     THE SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL .........13
       A.   The Rule 23(e)(2) Factors Weigh in Favor of Final Approval ..............15
            1.   Adequacy of Representation ......................................................15
            2.   Arm's Length Negotiation of Settlement....................................15
            3.   Adequate Relief..........................................................................16
            4.   Equal Treatment of Class Members............................................16
       B.   The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval..................16
            1.   There is No Risk of Fraud or Collusion (*UAW* Factor 1) ..........16
            2.   Litigation through Trial Would be Complex, Costly, and Long (UAW
                 Factor 2).....................................................................................18
            3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the
                 Case Responsibly (UAW Factor 3)............................................19
            4.   Plaintiff Would Face Real Risks if the Case Proceeded (UAW Factor 4).18
            5.   Class Counsel and Class Representative Support the Settlement (UAW
                 Factor 5) ....................................................................................19
            6.   The Reaction of Absent Class Members Is Uniformly Positive (UAW
                 Factor 6) ....................................................................................19
            7.   The Settlement Serves the Public Interest (UAW Factor 7)......................22
       C.   The Notice Plan Comports with Due Process.........................................24

VI.    BENJAMIN F. JOHNS SHOULD BE FINALLY APPOINTED AS SETTLEMENT
       CLASS COUNSEL................................................................................................26

CONCLUSION..................................................................................................................26

## I.    INTRODUCTION

On January 3, 2024, this Court preliminarily approved a $1.5 million non-reversionary, common fund Settlement[1] between Plaintiffs Jennie Devries, Tricia Garnett, Mark Cyphers, Timothy Drost, Joseph Rodgers, Emily Damaska, and Elise Carter (collectively, "Plaintiffs") and Defendant Hope College ("Defendant" or "Hope"). *See* Order Granting Preliminary Approval (ECF No. 34). The Settlement Administrator, Epiq Class Action & Claims Solutions ("Epiq"), has since implemented the Court-approved notice plan. Direct notice has reached approximately 96% of the Settlement Class. *See* **Exhibit B**, Declaration of Cameron R. Azari in Support of Implementation and Adequacy of Notice Plan and Notices, ¶¶ 7, 16 ("Azari Decl."). The reaction from the Settlement Class has been overwhelmingly positive: 6,318 claims have been filed as of May 6, 2024.[2] Only six (6) requests for exclusion have been received, and only a single "objection" to the Settlement was received by the April 8 objection deadline.[3]

Should the Court grant final approval to the settlement, 5,587 Settlement Class Members will receive a Cash Payment of approximately $138.45.10 each,[4] and 722 Settlement Class

---

[1]    The Settlement Agreement and its exhibits are included as Exhibit 1 to the accompanying **Exhibit A** hereto, the Declaration of Benjami F. Johns in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement ("Johns Decl.").

[2]    The Claims Period ends on May 7th, one day after the filing of this Motion. Per the Order Granting Preliminary Approval (ECF No. 32, PageID.968), the deadline for filing the Settlement Administrator's Supplemental Declaration is five days prior to the Final Fairness Hearing, or May 15, 2024. Settlement Class Counsel will file this Supplemental Declaration by May 15, 2024, and immediately post the Declaration to the Settlement Website, to provide the Court and the Settlement Class with an updated accounting.

[3]    Christopher Billquist, a Settlement Class Member, sent an email raising certain issues, primarily discussing his desire for extended credit monitoring. *See* **Exhibit C** hereto. As discussed in detail in Section V.B.6 below, in addition to failing to comply with the objection procedure listed in the class action Noice, Mr. Billquist raises issues that provide no basis to withhold final approval.

[4]    This is an approximate number—Settlement Class Members have one additional day remaining in the Claims Period to make a claim. Additional claims would reduce this number,

Members will receive credit monitoring and insurance for a year. Plaintiffs respectfully submit that the Settlement is an excellent result for the Settlement Class, and the Court should grant final approval.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs have set forth the relevant background of this litigation in their unopposed motions for preliminary approval and for attorneys' fees, expenses and service awards and, as such, repeat them herein only insofar as relevant to the instant motion. *See* ECF Nos. 29, 30, 37.

This case relates to a data breach experienced by Hope College on or around September 27, 2022 (the "Data Breach"). Several putative class actions were filed against Hope beginning in December of 2022. *See* ECF No. 8, PageID.162-153. Plaintiffs alleged generally that Hope failed to take reasonable measures to safeguard their sensitive information that it had been entrusted with. The Court consolidated these cases on February 14, 2023. ECF No. 11. Thereafter, on March 16, 2023, Plaintiffs filed the operative Consolidated Amended Complaint. *See* ECF No. 12 ("CAC").

Throughout the course of this litigation, the Parties discussed the possibility of exploring an early resolution via mediation. Johns Decl., ¶ 7. On May 15, 2023, the parties filed a joint motion to stay pending settlement discussions. ECF No. 17. The Court granted this request the following day, and issued an order staying the case directing the Parties to select a mediator by June 5, 2023. ECF No. 18. The Parties subsequently agreed to mediation with renowned mediator Bennet G. Picker of the Stradley Ronon law firm. ECF No. 21. Prior to the mediation, the parties exchanged information with one another and had ex parte phone calls with Mr.

---

while this number also may potentially increase based on the Settlement Administrator's review of the Documented Loss claims submitted to date.

Picker. Johns Decl., ¶ 10. On August 3, 2023, the Parties mediated the matter with Mr. Picker. *Id.* ¶ 12. The parties ultimately reached an agreement to settle the case for $1.5 million, and Plaintiffs filed their unopposed motion for preliminary approval on September 8, 2023. ECF Nos. 25, 26.

On November 13, 2023, the Court issued an Order denying without prejudice Plaintiffs' motion for preliminary approval. ECF No. 28. In its Order, the Court "identified several ambiguities and outstanding questions that prevent it from preliminarily approving this settlement." *Id.*, PageID.701. The Court first noted that it "requires a more accurate figure and proper estimations of any costs associated with carrying out the proposed settlement." *Id.* Additionally, relating to the distribution of the settlement payments and potential exhaustion of the Settlement Fund, the Court sought "[a]n estimation of the [credit monitoring and insurance services] cost coupled with an explanation as to why [credit monitoring and insurance services] would take priority over 'valid claims for Documented Loss Payments[.]'" *Id.*, PageID.702. Finally, the Court sought an explanation of the provision of the settlement agreement related to the treatment of taxes. *Id.*

On November 17, 2023, Plaintiffs filed a renewed motion addressing the issues raised by the Court in its November 13 Order. *See* ECF Nos. 29, 30. The Court, in turn, preliminarily approved the settlement on January 3, 2024. ECF No. 32.

## III.  SETTLEMENT TERMS

The terms of the Settlement Agreement ("S.A."), fully explained in Plaintiffs' Renewed Motion for Preliminary Approval of Class Action Settlement (*see* ECF No. 27, PageID.624-633), are briefly summarized below:

### A. Class Definition

The Settlement will provide substantial relief for the following Settlement Class: "all natural persons whose Personal Information was compromised in the Data Breach that was discovered by Hope College on or around September 27, 2022." S.A. § 1.42 (*see* S.A. § 1.42 for exclusions). The Settlement Class contains approximately 166,924 individuals. *See* Azari Decl., ¶ 11.[5]

### B. Settlement Fund

Hope College has agreed to create a non-reversionary gross Settlement Fund in the amount of $1,500,000, which will be used to make payments to Settlement Class Members and to pay the costs of Settlement Administration, any Attorneys' Fees and Expenses Award, and any Class Representative Service Awards. S.A. § 3.1.

The Settlement Fund provides the following three types of relief:

***Documented Loss Payment:***

> Class Members may submit a claim for a Settlement Payment of up to $5,000 for reimbursement in the form of a Documented Loss Payment. To receive a Documented Loss Payment, a Class Member must choose to do so on their Claim Form and submit to the Settlement Administrator the following: (i) a valid Claim Form electing to receive the Documented Loss Payment benefit; (ii) an attestation regarding any actual and unreimbursed Documented Loss made under penalty of perjury; and (iii) Reasonable Documentation that demonstrates the Documented Loss to be reimbursed pursuant to the terms of the Settlement. If a Class Member does not submit Reasonable Documentation supporting a Documented Loss Payment claim, or if a Class Member's claim for a Documented Loss Payment is rejected by the Settlement Administrator for any reason, and the Class Member fails to cure his or her claim, the claim will be rejected and the Class Member's claim will instead be automatically placed into the Cash Fund Payment category below.

---

[5] The initial estimate for the size of the was approximately 156,783 individuals. S.A. at p.1.

S.A. § 3.2(a).

### *Credit Monitoring and Insurance Services ("CMIS"):*

> In the alternative to the Documented Loss Payment or the Cash Fund Payment, class members may elect to claim 12 months of CMIS to be provided by a vendor agreed upon by the parties. The CMIS benefit will provide at a minimum three credit bureau monitoring services and $1 million in identity theft insurance. Said CMIS benefits will be available to class members irrespective of whether they took advantage of any previous offering of credit monitoring from Hope College. Individuals who elected to utilize a previous offering of CMIS from Hope College, or who obtained CMIS services from another provider as a result of the Data Breach, will be permitted to postpone activation of their CMIS settlement benefit for up to 12 months.

S.A. § 3.2(b).

### *Cash Fund Payment:*

> In the alternative to the Documented Loss Payment or the CMIS benefit, Class Members may submit a claim to receive a pro rata Settlement Payment in cash ("Cash Fund Payment"). The amount of the Cash Fund Payment will be calculated in accordance with Section 3.7 below. Class Members who submit a Claim for a Cash Fund Payment will not be entitled to select any of the other Settlement Benefits provided for under Section 3.2(a)-(b).

S.A. § 3.2(c).

In addition to the benefits described above, Hope provided for significant remedial measures and data security enhancements implemented to date. *See* S.A. § 2.1(a)–(h).

### C. Release

The Settlement Agreement includes a release that is limited to the claims alleged by Plaintiffs concerning the Data Breach:

> Upon the Effective Date, and in consideration of the Settlement Benefits described herein, the Class Representatives and all Class Members identified in the settlement class list in accordance with Section 6.4, on behalf of themselves, their heirs, assigns,

executors, administrators, predecessors, and successors, and any other person purporting to claim on their behalf, release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Breach or otherwise arises out of the same facts and circumstances set forth in the class action complaint in this Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

S.A., § 4. Accordingly, the release is not unduly broad and properly within the scope of the claims alleged in the CAC.

### D. Notice and Administration

As set forth in the accompanying Declaration of Cameron Azari submitted on behalf of the Settlement Administrator, Epiq sent 166,157 Postcard Notices to Settlement Class Members on February 7, 2024. Azari Decl., ¶¶ 11, 12. Prior to doing so, all mailing addresses were checked against the National Change of Address ("NCOA") database maintained by the USPS to ensure Settlement Class Member address information was up-to-date and accurately formatted for mailing. *Id.* at ¶ 13. As noted above, Epiq received a mere six requests for exclusion. *Id.* at ¶ 20. The Claims Administrator received no objections; on the final day of the objections period, Settlement Class Counsel and the Court's ECF help desk (at the email "ecfhelp@miwd.uscourt.gov") received an email from a Settlement Class Member, Christopher Billquist in which Mr. Billquist raised certain issues with the Settlement.[6] *Id.*

---

[6] Mr. Billquist's email is addressed in depth below in Section V.B.6.

Of the 6,318 claim forms received to date (with a single day remaining in the Claims Period), 722 are for CMIS, 9 are for Documented Loss Payments, and the remaining 5,587 seek a pro rata Cash Fund Payment. Azari Decl., ¶ 22. The cost of providing CMIS to the 722 people who claimed that option will be $7,220 total. *Id.* Based on Epiq's initial review of the Documented Loss Payments, $288 of those claims have been validated to date.[7] *Id.* As such, approximately $773,500 will be left from the Net Settlement Fund to be distributed to the 5,587 people who filed a claim for a Cash Payment, meaning that, with one day remaining in the Claims Period, each of those Settlement Class Members stand to receive approximately $138.45 if the Settlement receives final approval.[8] Johns Decl., ¶ 22.

### E. Service Award and Attorneys' Fees and Expenses

Plaintiffs also seek attorneys' fees and expenses and Service Awards as detailed in Plaintiffs' Renewed Unopposed Motion for Attorneys' Fees, Costs, Expenses, and Service Awards. *See* ECF No. 37.

## IV. THE SETTLEMENT CLASS MEETS THE REQUIREMENTS OF RULE 23 AND SHOULD BE CERTIFIED

In its Preliminary Approval Order (ECF No. 32), the Court found that Rule 23's requirements were met and provisionally certified the Settlement Class. PageID.962-963. Because the proposed Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and (b)(3), the Court should likewise grant final certification of the Settlement Class.

---

[7] To date, Epiq has received a total of $43,062.23 in Documented Loss claims for the nine claims submitted, and, although its review of these claims continue, it has only been able to verify $288 so far. *Id.*

[8] The amount remaining, the "Post CM/DL Net Settlement Fund" assumes that the full $43,062.23 of submitted Documented Loss claims are validated. If, as is likely, the remaining Documented Loss claims are not fully validated, then the Cash Payment amount would increase. If, e.g., all remaining claims were deemed to be invalid, those who elected the Cash Payment would each receive an additional $7.65, or $146.10.

Class certification requires that plaintiffs satisfy each of Rule 23(a)'s four prerequisites to class certification: (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. Fed. R. Civ. P. 23(a); *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am.*, 497 F.3d 615, 625 (6th Cir. 2007). In addition, the proposed class must meet one of the requirements of Rule 23(b). That the Parties have reached a settlement in this matter is a relevant consideration in the class-certification analysis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Indeed, "courts should give weight to the parties' consensual decision to settle class action cases, because [Rule 23] favors settlement in class action suits." *Daoust v. Maru Rest., LLC*, No. 17-cv-13879, 2019 WL 1055231, at *1 (E.D. Mich. Feb. 20, 2019) (granting preliminary approval of class action settlement and citing Fed. R. Civ. P. 23); *see also Amchem*, 521 U.S. at 620 (when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

Class certification is appropriate where, as here, "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) (quoting Fed. R. Civ. P. 23(a)). To certify a class under Rule 23(b)(3), the court must also find "'that the questions of law or fact common to class members predominate over any questions affecting only individual members' and that the class action is 'superior to other available methods' to adjudicate the controversy fairly and efficiently." *Id.* at 850-51 (quoting

Fed. R. Civ. P. 23(b)(3)). As demonstrated below, the Settlement Class described herein meet all Rule 23(a)'s requirements and the requirements of Rule 23(b)(3).

### A. Rule 23(a) Requirements Are Met for Settlement Purposes

*Numerosity and Ascertainability.* The first prerequisite is that the "class is so numerous that joinder of all members is impracticable." Rule 23(a)(1); *see also In re Am. Med. Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Though there is no fixed number determining impracticability, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Commc'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008); *see also Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (noting the modern trend requires a minimum of 21 to 40 class members). The Settlement Class includes approximately 156,783 individuals identified by Hope College—thus satisfying the numerosity requirement for purposes of settlement. *See* Fed. R. Civ. P. 23(a)(1). The Settlement Class is ascertainable as well. *See Kinder v. Nw. Bank*, 278 F.R.D. 176, 182 (W.D. Mich. 2011) ("[T]he requirement that there be a class will not be deemed satisfied unless the class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member."). Indeed, Hope College has already identified and provided notice to the Settlement Class Members that their information may have been exposed in the Data Breach. *See* ECF No. 30, PageID.719.

*Commonality.* Next, commonality is satisfied under Rule 23(a)(2) when there are questions of law or fact common to the class—the resolution of which will bring a class-wide resolution of the claims. Fed. R. Civ. P. 23(a)(2). Commonality may be shown when the claims of all class members "depend upon a common contention," with even a single common question sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545, 2551 (2011); *Whirlpool*, 722 F.3d at 853. The common contention must be capable of class-wide resolution and the

"determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2545, 2551. Here, Plaintiffs' claims turn on the adequacy of Hope College's data security in protecting Settlement Class Members' PII. Evidence to resolve that claim does not vary among class members, and so can be fairly resolved, at least for purposes of settlement, for all Settlement Class Members at once.

*Typicality.* Typicality requires that a class representative has claims that are typical of those of other class members. Fed. R. Civ. P. 23(a)(3). Plaintiffs satisfy the typicality requirement where their "claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007). Typicality is designed to assess "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998). The representative's claims need not be identical; rather, they need only "arise from the same course of conduct." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 884 (6th Cir. 1997). "In determining whether the requisite typicality exists, a court must inquire whether the interests of the named plaintiff are 'aligned with those of the represented group,' such that 'in pursuing his own claims, the named plaintiff will also advance the interests of the class members.'" *Garner*, 333 F.R.D. at 623 (quoting *In re Am. Med.*, 75 F.3d at 1082). Plaintiffs allege that each individual here was impacted by the same allegedly inadequate data security that Plaintiffs allege harmed the rest of the Settlement Class, as notified by their receipt of Defendant's indicating that their PII may have been compromised as a result of the Data Breach. Thus, Plaintiffs' pursuit of

their own claims here will necessarily advance the interests of the Settlement Class, satisfying the typicality requirement.

*Adequacy.* Class representatives under Rule 23(a)(4) must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "Class representatives are adequate when it appears that they will vigorously prosecute the interest of the class through qualified counsel . . . which usually will be the case if the representatives are part of the class and possess the same interest and suffer the same injury as the class members." *UAW*, 497 F.3d at 626. Class representatives must be part of the class, possess the same interests, have suffered the same injury, and seek the same type of relief as other class members. *See Beattie*, 511 F.3d at 562. Class Representatives here have no conflicts with the Settlement Class, have participated actively in the case, and are represented by attorneys experienced in class action litigation, including data breach cases.

Settlement Class Counsel and Additional Counsel for the Settlement Class (collectively, "Class Counsel") here regularly engage in consumer privacy cases, have the resources necessary to prosecute this case, and have frequently been appointed lead class counsel in data breach actions as well as other class actions. *See Meyers v. Onix Grp., LLC*, No. CV 23-2288-KSM, 2023 WL 4630674, at *2 (E.D. Pa. July 19, 2023) ("the Court finds that Mr. Johns . . . possess[es] extensive experience with class actions and the types of claims asserted, as well as considerable knowledge of the applicable law in this case. Mr. Johns, specifically, has almost 20 years of experience with complex class action cases and has been appointed Lead Counsel in data breach cases over a dozen times in various jurisdictions across the country[.]") (citations omitted). Class Counsel are well suited to advocate on behalf of the Class. Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiffs' claims

and that of the Settlement Class, obtaining, reviewing and analyzing Plaintiffs' detailed personal records, analyzing Hope College's records, privacy policies, any remedial steps, scope and number impacted by the Data Breach, Hope College's financial condition, participating in mediation, and, ultimately, negotiating a settlement that provides meaningful relief for the Settlement Class, despite the substantial litigation risks that were present. Johns Decl., ¶ 16. In sum, Plaintiffs' counsel and Settlement Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Settlement Class throughout the settlement administration process.

### B. Rule 23(b) Requirements Are Met for Purposes of Settlement

After satisfying Rule 23(a), a plaintiff must also satisfy one of the three requirements of Rule 23(b) for the Court to certify the proposed class. Fed. R. Civ. P. 23(b); *see also Dukes*, 131 S. Ct. at 2548; *Merenda v. VHS of Michigan, Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013). Here, Plaintiffs seek certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that (ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). "A plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564. And the superiority requirement of Rule 23(b)(3) considers "the difficulties likely to be encountered in the management of a class action" and whether individual litigation would yield small recoveries. *Id.*; *see also Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any

individual to bring a solo action prosecuting his or her rights."). As explained below, the proposed Settlement Class meets these requirements.

### 1. Common Questions of Law and Fact Predominate

Predominance focuses on whether the defendant's alleged liability is common enough to warrant class-wide adjudication. *Amchem*, 521 U.S. at 623. The proposed class must be "sufficiently cohesive to warrant adjudication by representation." *Id.* The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016). As such, predominance is met if a single factual or legal question is "at the heart of the litigation." *See Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007).

Data breach cases, such as the action here, present multiple questions of law and fact that are central to liability and thus predominate over any issues affecting individual class members. Hope College's alleged course of conduct was uniform across the entire Settlement Class, engaging in a single course of conduct with respect to all members of the Settlement Class, so their claims "will prevail or fail in unison." *Whirlpool*, 722 F.3d at 859. And since class-wide determination of this issue will be the same for all, i.e., determining whether any class member has a right of recovery, the predominance requirement is readily satisfied.

### 2. A Class Action Is the Superior Method of Adjudication

Certification of this suit as a class action is superior to other methods to fairly, adequately, and efficiently resolve the claims here. "The superiority requirement of Rule 23(b)(3) is met if the class action is a better way than individual litigation to adjudicate a claim." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 407–08 (E.D. Mich. 2012). Such is

especially true in situations which "vindicat[e] the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." *Amchem*, 521 U.S. at 617. Adjudicating individual actions here is impracticable: the amount in dispute for individual Settlement Class Members here is too small, the technical issues involved too complex, and the expert testimony and document review too costly. The individual amounts here are insufficient to allow anyone to file and prosecute an individual lawsuit—at least not with the aid of adequate counsel. Rather, individual prosecution of claims would be prohibitively expensive, needlessly delay resolution, and may lead to inconsistent rulings.[9] Thus, the Court should certify the Settlement Class pursuant to Rule 23(b)(3). Hope College does not oppose class certification for settlement purposes.

## V. THE SETTLEMENT SATISFIES THE STANDARD FOR FINAL APPROVAL

Settlement of class action suits is favored. *Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The Federal Rules of Civil Procedure require judicial approval of class action settlements. *Halliday v. Weltman, Weinber & Reis Co., L.P.A.*, No. 11–14275, 2013 WL 692856, at *1 (E.D. Mich. Feb. 26, 2013) (citing Fed. R. Civ. P. 23(e)). At final approval, the ultimate issue is whether the settlement is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983). Courts within the Sixth Circuit recognize a strong "federal policy favoring settlement of class actions." *See UAW*, 497 F.4d at 632; *see also Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 830 (E.D. Mich. 2008).

---

[9]     Because this Action is being settled on a class-wide basis, such theoretical inefficiencies are resolved—and the Court need not consider further issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems").

Rule 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition to these factors, the Sixth Circuit has laid out its own factors to consider. *See UAW*, 497 F.3d at 631. They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* As described below, each factor affirms the fairness, reasonableness, and adequacy of the Settlement, and supports final approval.

### A. The Rule 23(e)(2) Factors Weigh in Favor of Final Approval

#### 1. Adequacy of Representation

Plaintiffs and Class Counsel have adequately represented the Class and secured an excellent result. *See supra* § IV(A); *see also* 4 *Newberg and Rubenstein on Class Actions* § 13:48 (6th ed.).

#### 2. Arm's Length Negotiation of Settlement

The Parties negotiated the Agreement at arm's length. After conducting informal discovery, the parties settled through a neutral mediator, Bennett G. Picker, and there is no

evidence of fraud or collusion. *See supra* § II. Therefore, the second factor is satisfied. *See Hillson v. Kelly Servs. Inc.*, No. 2:15-cv-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (finding that settlement agreement was negotiated at arm's length because procedural history reflected non-collusive negotiations, informal and formal discovery, and multiple mediations sessions).

### 3. Adequate Relief

The adequacy of relief considers: (i) the costs, risk, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(2)(C).

The relief sought is more than adequate. Plaintiffs acknowledge that more litigation would be complex, costly, and likely continue for several years with no guarantee of relief. Johns Decl., ¶ 17. As described in Plaintiffs' Renewed Motion, the Settlement Agreement produces a gross class member result of $9.57. This approximate average per class member basis falls within the range of other similar data security incidents across the country. *See Thomsen v. Morley Cos. Inc.*, 639 F. Supp. 3d 758, 768 (E.D. Mich. 2022) (final approval of settlement that awarded average of approximately $6.19 per class member); *In re C.R. England Inc. Data Breach Litig.*, No. 2:22-cv-374 (D. Utah) (final approval of settlement that awarded average of approximately $6.23 per class member); *Reynolds v. Marymount Manhattan College*, No. 1:22-cv-06486 (S.D.N.Y.) (final approval of settlement that awarded average of approximately $6.78 per class member); *Jones, et al., v. P2ES Holdings, LLC*, No. 23-cv-00408 (D. Colo.) (final approval of settlement that awarded average of approximately $6.96 per class member); *Tucker*

*v. Marietta Area Health Care*, No. 2:22-cv-00184 (S.D. Ohio) (final approval of settlement that awarded average of approximately $8.08 per class member).[10]

The proposed method of distributing relief to the Settlement Class, including the processing of its claims, ensures that each member of the Settlement Class can obtain relief without high administrative burdens. And the proposed attorneys' fees will not exceed 33 1/3% of the Settlement Fund, which is adequate. *See Garner Props & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020).

### 4. Equal Treatment of Class Members

As detailed in § III(B), the Settlement Agreement provides each Settlement Class Member the opportunity for one of the following: (1) documented loss payment; (2) CMIS; or (3) cash payment. Accordingly, each Settlement Class Member has the same opportunity to participate in the Settlement.

### B. The Sixth Circuit's *UAW* Factors Weigh in Favor of Final Approval.

### 1. There is No Risk of Fraud or Collusion (*UAW* Factor 1)

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt*, 581 F. Supp. 2d at 838. Where, as here, a settlement was reached through arm's-length negotiations through an experienced mediator, there is no evidence of fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy."). Here, the Settlement was obtained via a

---

[10]   The class member average is calculated on a gross per class member basis.

full-day mediation with Mr. Picker that was conducted at arms-length after informal discovery. This factor, therefore, strongly supports approval. Johns Decl., ¶ 11.

### 2. Litigation Through Trial Would be Complex, Costly, and Long (*UAW* Factor 2)

The second UAW factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151 at *17. This case is no exception. As discussed above, the Parties have engaged in informal discovery and a private mediation. Johns Decl., ¶¶ 9, 11. The next steps in the litigation would include a contested motion to dismiss, and contested motions for class certification and summary judgment, which would be at a minimum costly and time-consuming for the Parties and the Court. *Id.*, ¶ 18. Undoubtedly, further litigation would create numerous risks that a litigation class could not be certified and/or that the Settlement Class would not recover nothing at all. *Id.*, ¶¶ 17, 18.

Defendant indicated that it would continue to assert numerous defenses on the merits. Class Counsel believes Defendant would have moved to dismiss the case under Rules 12(b)(1) and 12(b)(6) on the basis of lack of standing and failure to state a claim. *Id.*, ¶ 19. Class Counsel is also aware that Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial. *Id.*, ¶ 20. Looking beyond trial, Class Counsel are also aware that Defendant could appeal the merits of any adverse decision, including any class certification under Rule 23(f). *Id.*

The Settlement, on the other hand, permits a prompt resolution of this action on terms that are fair, reasonable, and adequate to the Settlement Class. This result will be accomplished years earlier than if the case proceeded to judgment through trial and/or appeal(s), and provides

certainty whereas litigation does not and could result in defeat for the Settlement Class on a motion to dismiss or on class certification, at summary judgment, at trial, or on appeal. Consequently, this *UAW* factor plainly weighs in favor of final approval of the Settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*UAW* Factor 3)

The third *UAW* Factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Here, the Parties exchanged information that would have contained the same information produced in formal discovery related to the issues of class certification and summary judgment; and thus, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. Johns Decl., ¶ 9. Class Counsel's experiences in similar matters, as well as the efforts made by counsel on both sides, confirms that they are sufficiently well apprised of the facts of this action and their respective cases in order to make an intelligent analysis of the Settlement.

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*UAW* Factor 4)

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. As stated above, Defendant would have likely moved to dismiss the CAC, vigorously contested class certification, and moved for summary judgment on various issues. Johns Decl., ¶¶ 19, 20. The risk of maintaining class status through trial is also present. Johns Decl., ¶ 18. At the time of Settlement, the Court had not yet certified the proposed Settlement Class, and the Parties anticipated that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing—likely years down the line. *Id.* Defendant would also likely argue that (1) individual questions preclude class certification; (2) a class action is not a superior method to resolve Plaintiffs' claims; and (3) a class trial would not be manageable. It is entirely plausible that Defendant would prevail on one, if not all, defenses. Johns Decl., ¶ 20.

Even if the Court did certify a Rule 23 class, Defendant would likely challenge certification through a Rule 23(f) application and subsequently move to decertify, forcing additional rounds of briefing. *Id.* Risk, expense, and delay permeate such a process. Johns Decl., ¶ 17. Moreover, in Class Counsel's experience, these additional steps in litigation can take years to resolve. *Id.* The proposed Settlement eliminates this risk, expense, and delay and awards Settlement Class Members payment promptly. This *UAW* factor thus favors final approval.

## 5. Class Counsel and Class Representative Support the Settlement (*UAW* Factor 5)

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *18. Here, both Class Counsel and Plaintiffs support the Settlement. *See* Johns Decl., ¶ 23. They do so, because as explained, this Settlement is an excellent result for Settlement Class Members in light of defenses likely to be raised by Defendant. This *UAW* factor therefore also favors final approval.

## 6. The Reaction of Absent Class Members Is Uniformly Positive (*UAW* Factor 6)

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. In most class action settlements, a small number of opt-outs and objections "are to be expected" and do not impact the Settlement's fairness. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (citations omitted); *see also Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (inferring that most "class members had no qualms" with settlement where 79 out of 11,000 class members objected). But here, only six (6) Settlement Class Members have requested exclusion out of a total of 166,924 Settlement Class Members. Azari Decl., ¶ 20. This *UAW* factor therefore plainly weighs in favor of final approval. *See, e.g., Hanlon v. Chrysler*, 150 F.3d 1011, 1027 (9th Cir. 1998) ("[T]he fact that the overwhelming majority of the class

willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness."); *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication of fairness."). It is also noteworthy that none of the attorneys general and other governmental officials who received notification of the settlement pursuant to the Class Action Fairness Act have filed objections. *See George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019) ("Not one CAFA notice recipient objected to the settlement, which also weighs in favor of its approval here.") (citing *Hall v. Bank of Am., N.A.*, No. 1:12-cv-22700, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014)).

As noted above, Class Counsel (and the ECF help desk) received a single "objection." The issues raised by Mr. Billquist in his correspondence, however, do not provide a basis to withhold granting final approval to the settlement.[11] Mr. Billquist states that, "as written," he does not "believe that the settlement properly acknowledges the severity of the damage done during this data breach." He claims that an unauthorized person created an account on his behalf at Bank of America, and believes that he "will need to be concerned about this for the rest of my life." He contends that offering one year of credit monitoring is insufficient, and argues instead that the settlement should offer it "for the rest of my life."

Courts have repeatedly rejected objections premised on the notion that the settlement recovery should have been "more" or "better." *See Hughes v. Microsoft Corp.*, No. C93-0178C, 2001 WL 34089697, at *10 (W.D. Wash. Mar. 26, 2001) ("An objection that the settlement

---

[11]      As an additional matter, Mr. Billquist's objection was not submitted properly as he failed to comply with the objection procedure listed in the Notice, as he failed to mail to the Court or otherwise properly submit it. *See* ECF No. 30-2, PageID.835. Nonetheless, any procedural deficiency aside, Class Counsel will respond to it as though it was properly submitted.

'could have been better . . . does not mean the settlement presented [is] not fair, reasonable or adequate.'") (quoting *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1027 (9th Cir.1998)). "Because '[s]ettlement is the offspring of compromise' the appropriate inquiry for a court reviewing a settlement pursuant to Rule 23(e) is 'not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.'" *Id. See also Yaeger v. Subaru of Am., Inc.*, No. 1:14-cv-4490, 2016 WL 4541861, at *17 (D.N.J. Aug. 31, 2016) (rejecting objections which suggested that the court "should insert other, more favorable terms into the proposed settlement" and recognizing that "[t]here is no middle ground of inserting or deleting terms at the request of an objector based on the judge's conception of what would be more fair, reasonable, or adequate."); *see also Ryder v. Wells Fargo Bank, N.A.*, No. 1:19-CV-638, 2022 WL 223570, at *2 (S.D. Ohio Jan. 25, 2022) (rejecting an objection that "generally assert[ed] that the payment amount . . . is too low give[n] her individual experience with [the defendant]" where the objector did "not include any documentation to support her claim that she [] is due any amount more than she would receive under the Settlement," and also where the objector "had the ability to opt out of the Settlement if she believed she should receive a higher individual payment from [the defendant] than that made available under the Settlement) (citing *Rosado v. eBay, Inc.*, No. 5:13-cv-04005, 2016 WL 3401987, at *9 (N.D. Cal. June 21, 2016)).

In the data breach context specifically, courts have approved settlements that have offered one year of credit monitoring. *See, e.g.*, *Fox v. Iowa Health Sys.*, No. 3:18-cv-00327, 2021 WL 826741, at *4 (W.D. Wis. Mar. 4, 2021) (finding that a data breach settlement which offered, *inter alia*, one year of credit monitoring to provide "adequate" relief); *Breneman v. Keystone Health*, No. 1:22-cv-01643 (Pa. Com. Pl. Aug. 2023) (approving a settlement with the same structure as the one in this case, including making available one year's worth of credit

monitoring and insurance services). *See also In re Banner Health Data Breach Litig.*, No. 2:16-cv-02696, 2020 WL 12574227, at \*5 (D. Ariz. Apr. 21, 2020) (rejecting objection that credit monitoring offered in a data breach settlement was insufficient: "These objections to the quality and duration of the [credit monitoring] product are yet again nothing more than a wishful desire for different, 'better' settlement terms."). Moreover, the fact that only one individual representing 1/166,924 (0.0006%) of the class has filed an "objection" is an indication of the settlement's fairness. *IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) (collecting cases). The settlement should be approved, notwithstanding Mr. Billquist's apparent dissatisfaction with the length of the credit monitoring being offered.

To the extent this Court finds Mr. Billquist's objection complied with the objection procedure, the Court should overrule the objection because it lacks merit, based on the overwhelming positive reaction of the Settlement Class and the reasonableness of the result achieved.

### 7. The Settlement Serves the Public Interest (*UAW* Factor 7)

The seventh and final *UAW* factor is the "public interest." *UAW*, 497 F.3d at 631. "[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *In re Cardizem*, 218 F.R.D. at 530 (internal quotations omitted). Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Society undoubtedly has a strong interest in incentivizing attorneys to bring complex litigation that is necessary to protect the privacy of individuals' most personal information. In fact, class action litigation in this area is the most realistic means of

obtaining recovery on behalf of the entire Settlement Class. This factor therefore supports final approval.

All of the *UAW* factors weigh in favor of approval, and the Settlement Agreement on its face is fair, reasonable, and adequate, and not a product of collusion. The Court should therefore grant final approval.

### C. The Notice Plan Comports with Due Process.

Before final approval can be granted, Due Process and Rule 23 require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen*, 417 U.S. at 173. Notice "need only be reasonably calculated . . . to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections." *UAW*, 2006 WL 891151, at *33 (E.D. Mich. Mar. 31, 2006) (citation omitted). Notice must clearly state essential information regarding the settlement, including the nature of the action, terms of the settlement, and class members' options. *See* Fed. R. Civ. P. 23(c)(2)(B); *Dick v. Sprint Commc'ns Co. L.P.*, 297 F.R.D. 283, 292 (W.D. Ky. 2014). At its core, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interest." *UAW*, 497 F.3d at 630 (citation omitted).

That said, Due Process does not require that every class member receive notice, and a notice plan is reasonable if it reaches at least 70% of the class. *Fidel v. Farley*, 534 F.3d 508, 514 (6th Cir. 2008); Fed. Judicial Ctr., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010); *see also In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-md-01998, 2009 WL 5184352, at *12 (W.D. Ky. Dec. 22, 2009) (finding

notice plan to be "the best notice practicable" where combination of mail and publications notice reached 81.8% of the class); *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269 (6th Cir. 2016) (finding that notice and claims processes were appropriate where 90.8% of notices were successfully delivered to addresses associated with class members). The notice plan here easily meets—and even surpasses—the standard, with individual notice efforts reaching approximately 96% of the identified Settlement Class members. Azari Decl., ¶¶ 7, 16, 25.

At preliminary approval, the Court approved the Parties' proposed Notice Plan, finding it met the requirements of Rule 23 and Due Process. ECF No. 32, PageID.965. That plan has now been fully carried out by Settlement Administrator Epiq. Pursuant to the Settlement, Defendant provided Epiq two data files containing the names and last known mailing addresses of identified Settlement Class Members. Azari Decl., ¶ 11. Epiq successfully delivered Court-Approved notice to be 96% of the Settlement Class. *Id*., ¶ 16.[12] On February 6, 2024, a toll-free telephone number was established, which allowed callers to hear an introductory message and have the option to learn more about the Settlement in the form of recorded answers to FAQs, and to request that a Claim Package (Long Form Notice and Claim Form) be mailed to them. *Id*., ¶ 15. Epiq sent out 71 Claims Packages by mail per Class Member request. *Id*. These summary notices also directed Settlement Class Members to the Settlement Website, where they were able to submit a change of address; access important court filings; and see deadlines and answers to frequently asked questions. *Id*., ¶ 17. Epiq, in total, received 6,318 Claim Forms to date. *Id*., ¶ 22.[13]

---

[12] Epiq also notified the appropriate state and federal officials pursuant to CAFA. *Id*., ¶ 8.
[13] The claim filing period remains open until May 7, and a Supplemental Declaration by the Claims Administrator will be filed by May 15, 2024. *See, supra*, n.2.

Given the broad reach of the notice and comprehensive information provided, the requirements of Due Process and Rule 23 are met.

## VI.   BENJAMIN F. JOHNS SHOULD BE FINALLY APPOINTED AS SETTLEMENT CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Rule 23(g)(1)(B). In making this determination, courts generally consider the following factors: (1) proposed class counsel's work in identifying or investigating potential claims; (2) proposed counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) proposed counsel's knowledge of the applicable law; and (4) proposed counsel's resources committed to representing the class. Rule 23(g)(1)(A)(i-iv). *See also*, *supra* § IV(A).

As affirmed in this Court's Preliminary Approval Order, Mr. Johns has extensive experience in prosecuting data breach class actions and other complex cases. Johns Decl., ¶ 24. Further, Settlement Class Counsel has diligently investigated and prosecuted *this* case by dedicating substantial resources to it and successfully negotiating this Settlement. *See* S.A.; CAC. Thus, the Court should finally appoint Benjamin F. Johns of Shub & Johns LLC as Settlement Class Counsel.

## VII.   CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Unopposed Motion for Final Approval of Class Action Settlement, enter Final Judgment in the form submitted herewith, and overrule the objection to Settlement Agreement.[14]

---

[14]   Attached hereto are copies of the proposed Final Approval Order (**Exhibit D**) and the proposed Final Judgment (**Exhibit E**).

Date: May 6, 2024                          Respectfully Submitted,


                                          <u>*/s/ Benjamin F. Johns*</u>
                                          Benjamin F. Johns
                                          Jonathan Shub
                                          Samantha E. Holbrook
                                          **SHUB & JOHNS LLC**
                                          Four Tower Bridge,
                                          200 Barr Harbor Drive, Ste 400
                                          Conshohocken, PA 19428
                                          T: (610) 477-8380
                                          bjohns@shublawyers.com
                                          sholbrook@shublawyers.com

                                          *Settlement Class Counsel*

**THE MILLER LAW FIRM, P.C.**
E. Powell Miller (P39487)
Emily E. Hughes (P68724)
950 W. University Dr., Suite 300
Rochester, MI 48307
T: (248) 841-2200
epm@millerlawpc.com
eeh@millerlawpc.com

**LOWEY DANNENBERG, P.C.**
Christian Levis
Amanda G. Fiorilla
44 South Broadway, Suite 1100
White Plains, NY 10601
T: (914) 997-0500
clevis@lowey.com
afiorilla@lowey.com

**LOWEY DANNENBERG, P.C.**
Anthony M. Christina
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
T: (215) 399-4770
achristina@lowey.com

**CHESTNUT CAMBRONNE PA**
Bryan L. Bleichner
Philip J. Krzeski
100 Washington Avenue South, Ste. 1700
Minneapolis, MN 55401
bbleichner@chesnutcambronne.com
pkrzeski@chestnutcambronne.com

**THE LYON LAW FIRM, LLC**
Joseph M. Lyon
2754 Erie Ave.
Cincinnati, OH 45208
Phone: (513) 381-2333
jlyon@thelyonfirm.com

Charles R. Ash, IV (P73877)
**ASH LAW, PLLC**
402 W. Liberty St.
Ann Arbor, MI 48178
Phone: 734-234-5583

cash@nationalwagelaw.com

Terence R. Coates
Justin C. Walker
Dylan J. Gould
**MARKOVITS, STOCK &
DEMARCO, LLC**
119 E. Court Street, Suite 530
Cincinnati, Ohio 45202
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

*Additional Counsel for the Settlement Class*

**CERTIFICATE REGARDING WORD COUNT**

Plaintiffs, in compliance with W.D. Mich. LCivR 7.2(b)(i)-(ii), used 8,290 words[15] in Plaintiffs' foregoing brief. Microsoft Word for Office 365 Business version 1910 is the word processing software used to generate the word count in the attached brief.

Dated: May 6, 2024                         Respectfully submitted,

                                           */s/ Benjamin F. Johns*
                                           Benjamin F. Johns
                                           **SHUB & JOHNS LLC**
                                           bjohns@shublawyers.com

---

[1]     Since a motion for final approval of class action settlement may ultimately result in the case being fully disposed of, Plaintiffs aver that the word count provided for under W.D. Mich. LCivR 7.2(b)(i), Dispositive Motions- permitting a maximum of 10,800 words, applies here.

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I electronically filed the foregoing documents using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.

*/s/ Benjamin F. Johns*
Benjamin F. Johns
**SHUB & JOHNS LLC**
Four Tower Bridge,
200 Barr Harbor Drive, Ste 400
Conshohocken, PA 19428
T: (610) 477-8380
bjohns@shublawyers.com